[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11190
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 9, 2009
THOMAS K. KAHN
CLERK

Agency No. A099-481-853

OLIVER ADONAY TOVAR-CORTEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 9, 2009)

Before BARKETT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Oliver Adonay Tovar-Cortez, through counsel, petitions for review of the

final order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") denial of his claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), INA §§ 208, 241(b)(3)(A), 8 U.S.C. §§ 1158, 1231(b)(3)(A), 8 C.F.R. § 208.16, and for relief under the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c). On petition for review, Tovar-Cortez argues that the BIA erred in finding that he was not eligible for asylum or withholding of removal because he did not show past persecution or a fear of future persecution on account of a protected ground, specifically, his political opinion.

## I. BACKGROUND

Tovar-Cortez, a native and citizen of El Salvador, who entered the United States in December 2005 without being admitted or paroled, was issued a notice to appear by the Department of Homeland Security, and Tovar-Cortez was found removable by an IJ at his removal hearing. In September 2007, Tovar-Cortez filed an application seeking asylum and withholding of removal based on persecution on account of his political opinion and membership in a particular social group. He also applied for CAT relief. In support of his application, Tovar-Cortez alleged that in 2004, members of a gang known as the Mara 18 ("the Maras") tried to force him to join the gang. When he refused and instead reported them to the police, they threatened to kill him. Tovar-Cortez feared that the Maras would kill him

because they killed other young people who refused to join their gang. At the asylum hearing, Tovar-Cortez argued that the Maras had a political agenda of anarchy, and he was targeted by them because of his opposition to that agenda, which he demonstrated by refusing to join them and by filing a police report. The bulk of Tovar-Cortez's testimony and supporting documents centered around the Maras' political agenda, and the government responded that the Maras are a criminal gang, rather than a political organization.

The IJ found that Tovar-Cortez failed to establish that he suffered past persecution or had a well-founded fear of future persecution on the basis of an enumerated ground. In particular, although the IJ found Tovar-Cortez to be credible, she concluded that the alleged persecution was not on account of Tovar-Cortez's political opinion or membership in a particular social group. The IJ concluded that the Maras tried to recruit Tovar-Cortez because they wanted him to participate in criminal, rather than political activity. The IJ found that filing a police report did not constitute political action against the Maras. As to Tovar-Cortez's claim of persecution based on his membership in a social group, the IJ determined that Tovar-Cortez did not provide any evidence showing that the Maras harm young men who refuse to join them. As to the CAT claim, the IJ found that Tovar-Cortez presented no evidence that he would be tortured by, or with the acquiescence of, the Salvadoran government. To the contrary, the Salvadoran

3

government was trying to fight the Maras. Thus, the IJ denied Tovar-Cortez's claims for asylum, withholding of removal, and CAT relief.

On appeal to the BIA, Tovar-Cortez argued that the IJ erred by failing to find that he was eligible for asylum or withholding of removal because he had been persecuted based on his political opinion.[1] Tovar-Cortez argued that the IJ erred by finding that the Maras were not a political organization. The BIA affirmed the IJ's decision, finding that Tovar-Cortez failed to establish a nexus between the alleged persecution and a protected ground. The BIA agreed with the IJ that any fear of future persecution was based on Tovar-Cortez's refusal to join a criminal gang, which did not amount to expression of a political opinion or lead to the imputation of a political opinion. We agree with the decisions and reasoning of the IJ and BIA, and accordingly deny the petition.

## II. STANDARD OF REVIEW

We only review the BIA's decision, except to the extent that it adopts the

---

[1]Tovar-Cortez did not appeal to the BIA the decision of the IJ denying asylum and withholding of removal because he had not been persecuted based on his membership in a particular social group. He also did not appeal to the BIA his denial of CAT relief. If a party fails to raise an issue before the BIA, we do not have jurisdiction to consider that issue, even if the BIA considered the issue *sua sponte*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006) (per curiam). In order to properly raise an issue before the BIA, the party must mention the issue in his brief and discuss its merits or the basis for the IJ's decision. *See Alim v. Gonzales*, 446 F.3d 1239, 1253 (11th Cir. 2006). Therefore, we do not have jurisdiction to review whether Tovar-Cortez was persecuted because of his membership in a particular social group or the denial of CAT relief on appeal because Tovar-Cortez did not address those issues in his brief to the BIA.

IJ's decision. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230 (11th Cir. 2006) (per curiam). To the extent that the BIA adopts the IJ's reasoning, we review the IJ's decision also. *Id.* Here, the BIA issued a written opinion, in which it agreed with the reasoning of the IJ. Therefore, we review the BIA's opinion, and the IJ's opinion only to the extent that the BIA adopted the IJ's reasoning.

We review the IJ's and the BIA's factual determinations under the substantial evidence test and will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007) (quoting *Forgue v. U.S Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005)) (internal quotation omitted). We review the record evidence in the light most favorable to the BIA's decision. *Forgue*, 401 F.3d at 1286 (citing *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc)). Moreover, we may not overturn the BIA's findings of fact unless the record compels it. *Id.* at 1287 (citing *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004)).

### III. DISCUSSION

To be eligible for asylum, an alien must prove refugee status. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). The applicant satisfies this burden by showing, with specific and credible evidence, either (1) past persecution on account of race, religion, nationality, membership in a particular social group, or

5

political opinion; or (2) a well-founded fear of persecution on account of one of the above-listed factors. 8 C.F.R. § 208.13(a), (b); *Mejia*, 498 F.3d at 1256. An alien seeking withholding of removal must show that it is more likely than not that he will be persecuted or tortured upon being returned to his country. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (per curiam) (citing *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002)). This standard is more stringent than the standard for asylum. *Id.* Accordingly, an alien who fails to establish eligibility for asylum generally cannot satisfy the higher burden for withholding of removal. *Id.* at 1232–33.

To establish eligibility for asylum or withholding of removal, an alien must establish a nexus between a statutorily protected ground and the persecution. *See id.* at 1230–31. Here, the statutorily protected ground Tovar-Cortez seeks to establish is political opinion. *See* 8 C.F.R. § 208.13(b). An alien can meet this burden by presenting specific, detailed facts demonstrating a good reason to fear that he will be singled out for persecution on account of such ground. *Sepulveda*, 401 F.3d at 1231 (citing *Al Najjar*, 257 F.3d at 1287). Under the REAL ID Act of 2005, which applies to all applications for asylum or withholding of removal filed after May 11, 2005, an applicant must demonstrate that one of the protected grounds was or will be "at least one central reason" for the persecution. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). Tovar-Cortez filed his application

6

for asylum in 2007, so the REAL ID Act of 2005 applies. To warrant a reversal of a finding that an alien failed to demonstrate a sufficient nexus between the alleged persecution and the alien's political opinion, "we must be compelled to find that the alien will be persecuted '*because of*' his political opinion." *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (per curiam) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992)).

An alien who alleges persecution on account of his political opinion must establish that he was persecuted because of his own actual or imputed political opinion, not because of the persecutor's political motives. *Elias-Zacarias*, 502 U.S. at 482; *see also Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437–38 (11th Cir. 2004) (per curiam). Here, Tovar-Cortez presented ample evidence that the Maras threatened him based on *their* political motives, but there is no evidence that the Maras targeted Tovar-Cortez based on *his* individual or imputed political opinion or motive. Moreover, "evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam) (citing *Sanchez*, 392 F.3d at 438). The Supreme Court and this Court have held that persecution because of refusal to cooperate with or join a guerilla group alone is insufficient to satisfy the

7

nexus requirement. *See Elias-Zacarias*, 502 U.S. at 481–82 (refusal to join guerilla forces); *Rodriguez Morales*, 488 F.3d at 890–91 (refusal to provide services to guerillas); *Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 821–22 (11th Cir. 2007) (refusal to pay guerillas' war tax); *Sanchez*, 392 F.3d at 438 (refusal to meet and cooperate with guerillas).

In *Elias-Zacarias*, the Supreme Court rejected the Ninth Circuit's holding that resistance to attempted conscription by guerillas sufficed to show a political opinion. 502 U.S. at 481. The Supreme Court reasoned that the victim's resistance to recruitment was based on his fear of retaliation from the government, and not his own or imputed political motives. *Id.* at 482. Moreover, the guerillas's interest in filling their ranks "to carry on their war against the government and pursue their political goals" was irrelevant to the victim's political opinion. *Id.* Here, the IJ found that there was no nexus between the alleged persecution or fear of future persecution and Tovar-Cortez's political opinion. Upon review of the record and consideration of the parties' briefs, we conclude that they do not compel a finding to the contrary.

Guided by *Elias-Zacarias*, we reject Tovar-Cortez's arguments that refusing to join the Maras and reporting the Maras' threats to the police constituted political action. Tovar-Cortez did not present any evidence that the Maras attempted to recruit him because of his political opinion, and it is irrelevant whether the Maras

8

furthered its political objectives by attempting to recruit and threatening Tovar-Cortez. Therefore, substantial evidence supports the BIA's determination that Tovar-Cortez was threatened based on his refusal to join a criminal gang, rather than on the basis of any political opinion that he held. Accordingly, Tovar-Cortez was not entitled to asylum or withholding of removal.

**PETITION DENIED.**